UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION AT DAYTON

**United States of America**,

        *Plaintiff*,

v.                                                **Case No. 3:20-cr-068 (1)**
                                                                  **Judge Thomas M. Rose**

**Joseph Mayes,**

        *Defendant*.

---

**ENTRY AND ORDER DENYING MOTION FOR COMPASSIONATE RELEASE (DOC. 50, 53).**

---

Pending before the Court is a motion by Defendant Joseph Mayes for a reduction of sentence under the compassionate release provisions of 18 U.S.C. § 3582(c)(1)(A). (Doc. 46). The Government filed a response. (Doc. 50). Defendant requests an order reducing his sentence to time served; or in the alternative, modifying his judgment to allow the remainder of his sentence to be served on home confinement. Appointed Counsel renewed Defendant's request on June 13, 2022. (Doc. 53). The Government has opposed Defendant's motions. (Doc. 54).

**I.**    **Background**

On January 25, 2022, Defendant Joseph W. Mayes pleaded guilty to knowingly and intentionally possessing in excess of 40 grams of a mixture or substance containing a detectable amount of fentanyl with intent to distribute. (Doc. 32, 35). The plea agreement included a

recommended agreed sentence of imprisonment for a term of 60 months pursuant to Fed. R. Crim. P. 11(c)(1)(C). Id. On July 6, 2021, the Court sentenced Defendant to a term of 60 months of imprisonment. (Docs. 45 and 46).

At the time of his sentencing, Defendant was 40 years old and suffered from severe medical and mental health conditions. From July 2010 to November 2018, he made 43 emergency room visits to Miami Valley Hospital. Most of these visits were for diabetes and neuropathy. He also has a lengthy history of depression and anxiety. Defendant currently suffers from diabetes, high cholesterol, neuropathy, obesity, depression, and anxiety, contributing to increased risk of mortality or serious disease associated with contracting Covid-19.

Since being sentenced, Defendant has also been diagnosed with peripheral vascular disease, a slow and progressive circulation disorder. Defendant's father passed away from diabetic complications and his mother passed away from a heart attack.

Because of Defendant's compromised health, he was ordered to report to the medical center at FMC Lexington in Kentucky and remains there. BOP medical records indicate that Defendant received the Pfizer vaccine in September and October of 2021. Although Defendant has not tested positive for Covid 19 and has received his vaccine, infection remains a possibility. Due to Defendant's underlying medical conditions, he is at a risk for severe consequences.

Defendant is a 42 year-old male currently housed at Lexington FMC. He is scheduled to be released April 28, 2025. www.bop.gov/inmateloc/ (Visited August 15, 2022). There are currently three inmates who have currently tested positive for Covid at Lexington FMC. www.bop.gov/coronavirus/ (Visited August 15, 2022). Six staff members are likewise positive. Ten inmates have died from Covid, while no staff members have. In total, 498 inmates and 215

staff members have contracted and recovered from Covid, out of a population of approximately 1,046. https://www.bop.gov/mobile/about/population_statistics.jsp. (August 15, 2022).

Defendant submitted a request for compassionate release to the Warden of FMC Lexington on December 29, 2021. The request was denied by the Warden on January 20, 2022.

**II.     Analysis**

Defendant asks the Court to grant him a reduction in sentence as permitted by 18 U.S.C. § 3582(c)(1)(A)(i) and to consider what he alleges are extraordinary and compelling reasons for doing so. Section 603(b) of the First Step Act, which was signed into law on December 21, 2018, modified 18 U.S.C. § 3582 to allow a defendant to bring a motion on his or her own behalf either "[1] after the defendant has fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf or [2] the lapse of 30 days from the receipt of such request by the warden of the defendant's facility, whichever is earlier." 18 U.S.C. § 3582(c)(1)(A); Pub L. No. 115-391, 132 Stat. 5194; *see also United States v. Alam*, 960 F.3d 831, 833-34 (6th Cir. 2020) ("If the Director of the Bureau of Prisons does not move for compassionate release, a prisoner may take his claim to court only by moving for it on his own behalf. To do that, he must fully exhaust all administrative rights to appeal with the prison or wait 30 days after his first request to the prison," and "[p]risoners who seek compassionate release have the option to take their claim to federal court within 30 days, no matter the appeals available to them") (internal quotation marks omitted) (alterations adopted).

A district court has limited authority to modify a sentence. "Generally speaking, once a court has imposed a sentence, it does not have the authority to change or modify that sentence unless such authority is expressly granted by statute." *United States v. Hammond*, 712 F.3d 333,

3

335 (6th Cir. 2013). Section 3582(c)(1)(A) grants such authority in certain limited circumstances. It provides in part:

> The court may not modify a term of imprisonment once it has been imposed except that—in any case—the court … may reduce the term of imprisonment (and may impose a term of probation or supervised release with or without conditions that does not exceed the unserved portion of the original term of imprisonment), after considering the factors set forth in [18 U.S.C.] § 3553(a) to the extent that they are applicable, if it finds that extraordinary and compelling reasons warrant such a reduction … and that such a reduction is consistent with applicable policy statements issued by the Sentencing Commission.

18 U.S.C. § 3582(c)(1)(A)(i).

Thus, the Court can modify a term of imprisonment if it finds that (1) "extraordinary and compelling reasons warrant such a reduction," (2) "such a reduction is consistent with applicable policy statements issued by the Sentencing Commission," and (3) such a reduction is appropriate "after considering the factors set forth in § 3553(a) to the extent that they are applicable." 18 U.S.C. § 3582(c)(1)(A)(i); *see also United States v. Kincaid*, 802 F. App'x 187, 188 (6th Cir. 2020); *United States v. Spencer*, No. 20-3721, 2020 U.S. App. LEXIS 28051, at *4, 2020 WL 5498932 (6th Cir. Sept. 2, 2020).

While judges "have full discretion to define 'extraordinary and compelling' without consulting the policy statement § 1B1.13." *United States v. Jones*, No. 20-3701, – F.3d –, 2020 WL 6817488 at *9 (6th Cir. November 20, 2020), the Court references U.S.S.G. § 1B1.13 for guidance. Therein, the Sentencing Commission identifies four circumstances in which "extraordinary and compelling reasons" may exist. *See* 28 U.S.C. § 994(t) ("The Commission, in promulgating general policy statements regarding the sentencing modification provisions in § 3582(c)(1)(A) of Title 18, shall describe what should be considered extraordinary and compelling reasons for sentence reduction, including the criteria to be applied and a list of

4

specific examples"). United States Sentencing Commission, Guidelines Manual, § 1B1.13, at cmt. n.1 (Nov. 1, 2018) (Reduction in Term of Imprisonment Under 18 U.S.C. § 3582(c)(1)(A) (Policy Statement)). Those four circumstances are: (A) Medical Condition of the Defendant; (B) Age of the Defendant; (C) Family Circumstances; and (D) other extraordinary and compelling reasons. *Id.* Each of the four circumstances has its own parameters. *Id.* Commentary also confirms that, "[p]ursuant to 28 U.S.C. § 994(t), rehabilitation of the defendant is not, by itself, an extraordinary and compelling reason for purposes of this policy statement." *Id.* at cmt. n.3; *see also United States v. Keefer*, No. 19-4148, 2020 U.S. App. LEXIS 32723, at *6-7, 2020 WL 6112795 (6th Cir. Oct. 16, 2020) ("[i]n Application Note 1 to § 1B1.13, the Commission also listed the 'extraordinary and compelling reasons' that might entitle a defendant to a sentence reduction").

The policy statement also encourages the Court to consider whether the defendant is "a danger to the safety of any other person or to the community, as provided in 18 U.S.C. § 3142(g)." *Id.*; *see also Kincaid*, 802 F. App'x at 188; *Spencer*, 2020 U.S. App. LEXIS 28051, at *4 ("[t]he district court must also find that the defendant is not a danger to the safety of any other person or to the community") (internal quotation marks omitted). Section 3142(g) provides factors to be considered in making that "danger to the safety" determination.

Specifically, 18 U.S.C. § 3142(g) states:

> (g) Factors to be considered. The judicial officer shall, in determining whether there are conditions of release that will reasonably assure the appearance of the person as required and the safety of any other person and the community, take into account the available information concerning—
>
> (1) the nature and circumstances of the offense charged, including whether the offense is a crime of violence, a violation of § 1591

5

> [18 USCS § 1591], a Federal crime of terrorism, or involves a minor victim or a controlled substance, firearm, explosive, or destructive device;
>
> (2) the weight of the evidence against the person;
>
> (3) the history and characteristics of the person, including—
>
> (A) the person's character, physical and mental condition, family ties, employment, financial resources, length of residence in the community, community ties, past conduct, history relating to drug or alcohol abuse, criminal history, and record concerning appearance at court proceedings; and
>
> (B) whether, at the time of the current offense or arrest, the person was on probation, on parole, or on other release pending trial, sentencing, appeal, or completion of sentence for an offense under Federal, State, or local law; and (4) the nature and seriousness of the danger to any person or the community that would be posed by the person's release. In considering the conditions of release described in subsection (c)(1)(B)(xi) or (c)(1)(B)(xii) of this section, the judicial officer may upon his own motion, or shall upon the motion of the Government, conduct an inquiry into the source of the property to be designated for potential forfeiture or offered as collateral to secure a bond, and shall decline to accept the designation, or the use as collateral, of property that, because of its source, will not reasonably assure the appearance of the person as required.

18 U.S.C. § 3142(g); *see also United States v. Jones*, No. 20-3748, 2020 U.S. App. LEXIS 32451, at *4-5 (6th Cir. Oct. 14, 2020).

The factors set forth in § 3553(a) "include, among others, 'the nature and circumstances of the offense'; the defendant's 'history and characteristics'; the need for the sentence imposed to reflect the seriousness of the offense, provide just punishment, and afford adequate deterrence; and the need to avoid unwarranted sentencing disparities." *Jones*, 2020 U.S. App. LEXIS 32451, at *6 (quoting 18 U.S.C. § 3553(a)(1), (2), (6)).

Moreover, "compassionate release is discretionary, not mandatory." *United States v.*

6

*Chambliss*, 948 F.3d 691, 693 (5th Cir. 2020); *see also* 18 U.S.C. § 3582(c)(1)(A)(i) (stating that a court "may" reduce the term of imprisonment); *Keefer*, 2020 U.S. App. LEXIS 32723, at *7 ("The statute's plain text makes evident the discretionary nature of a compassionate-release decision," and "the statute lists factors that, when present, *permit* a district court to reduce a sentence") (emphasis in original).

The Bureau of Prisons has taken significant measures to protect inmates. On March 13, 2020, in accordance with its Coronavirus (COVID-19) Action Plan, BOP began to modify its operations to minimize the risk of COVID-19 transmission into and inside its facilities. Since that time, BOP has repeatedly revised the Action Plan to address the crisis. BOP has implemented modified operations to maximize social distancing. Only limited movement is afforded to facilitate commissary, laundry, showers, telephone, and computer access. Further, BOP has severely limited movement of inmates and detainees among its facilities and has implemented detailed screening and quarantine protocols. See www.BOP.gov/coronavirus.

In addition, Bureau of Prisons institutions are receiving vaccine allocations and are working to make the vaccine available to staff and inmates as quickly as possible. More than 368,050 doses have already been administered to BOP staff and inmates. See https://www.bop.gov/coronavirus/ (last visited August 9, 2022).

In an effort to assist inmates who are most vulnerable to the disease and pose the least threat to the community, BOP is also exercising greater authority to designate inmates for home confinement. On March 26, 2020, the Attorney General directed BOP to prioritize transferring inmates to home confinement in appropriate circumstances when those inmates are vulnerable to COVID-19 under the CDC risk factors. A subsequent memorandum from the Attorney General

7

on April 3, 2020, further directed BOP to expand the range of inmates eligible for home confinement, as authorized by the CARES Act. See Section 12003(b)(2) of the Coronavirus Aid, Relief, and Economic Security Act ("CARES Act"), Pub. L. No. 116-136, enacted March 27, 2020.

Since the Attorney General's memo on March 26, 2020, BOP has placed an additional 45,116 inmates on home confinement. See www.BOP.gov/coronavirus/ (last accessed July 26, 2022). Of these, 11 have died of COVID. Id. In this case, BOP has denied Defendant's request for compassionate release.

Defendant suffers from the following health conditions: peripheral vascular disease/ peripheral artery disease; high blood pressure; diabetes; high cholesterol; neuropathy; obesity; depression; and anxiety. These conditions are all recognized as underlying medical conditions which may indicate a high risk for severe Covid-19 infection or conditions which may be aggravated by Covid-19. Defendant also suffers from glaucoma, chronic periodontitis, and retinopathy.

Defendant's medical conditions place him at greater risk of serious illness or death from COVID-19. Defendant's confinement increases the likelihood that Defendant will suffer from complications due to COVID-19. The Court recognizes Defendant's health conditions have worsened and he has been diagnosed with additional ailments since his arrival to FMC Lexington.

However, the 18 U.S.C. § 3553(a) factors do not weigh in favor of Defendant's compassionate release. The Court must "consider the [sentencing] factors set forth in section 3553(a)to the extent that they are applicable." 18 U.S.C. § 3582(c)(1)(A). The applicable factors

8

are: (1) the nature and circumstances of the offense and the history and characteristics of the defendant; (2) the need for the sentence imposed— (A) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense; (B) to afford adequate deterrence to criminal conduct; (C) to protect the public from further crimes of the defendant; and (D) to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner; ... [and] (6) the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct[.] 18 U.S.C.§3553(a). The statute also mandates: "The court shall impose a sentence sufficient, but not greater than necessary, to comply with the purposes set forth in paragraph (2)." Id.

The first factor is "'the nature and circumstances of the offense and the history and characteristics of the defendant." 18 U.S.C. § 3553(a)(1). Defendant has a limited criminal record with only one prior conviction for access device fraud and no history of violent offenses. However, while Defendant has no prior conviction for trafficking in controlled substances, he pleaded guilty to distributing fentanyl, which is killing residents of the district at an alarming rate.

Prior to sentencing, Defendant was detained without bond for a period of approximately seven months, until he was released on September 10, 2020, on conditions of supervision. While on pretrial supervision, Defendant performed quite well on bond and maintained employment at KIA of Beavercreek as a lot technician and later as a Door Dash driver. He maintained a relatively steady history of employment prior to incarceration. The Court recognizes Defendant has a supportive family including four children and one grandchild.

Recognizing Defendant's conduct and the underlying facts of this offense, the Court already allowed a significant downward departure. A further reduction in his term of incarceration would make light of the seriousness of his offense. Willingness to distribute fentanyl is a threat to the general public.

Defendant has not presented the Court with extraordinary and compelling reasons for early release. A reduction in sentence would not reflect the need to "protect the public from further crimes of the defendant" under § 3553(a)(2). The need for the sentence to reflect the seriousness of the offense, afford adequate deterrence, and protect the public similarly cuts against relief. See 18 U.S.C. § 3553(a)(2). In view of the § 3553 sentencing factors, compassionate release is improper here. *See* § 3582(c)(1)(A).

### III. CONCLUSION

Defendant Joseph Mayes does not meet the requirements necessary to be granted relief under 18 U.S.C. § 3582(c)(1)(A). Thus, the Court **DENIES** Motion for a Reduction of Sentence Under the Compassionate Release Provisions Pursuant to 18 U.S.C. § 3582(c)(1)(A) and the First Step Act of 2018. (Doc. 50, 53).

**DONE** and **ORDERED** in Dayton, Ohio on Thursday, August 25, 2022.

s/Thomas M. Rose

_____

THOMAS M. ROSE
UNITED STATES DISTRICT JUDGE